(37 Misc. Rep. 303.)

### FREIFELD et al. v. MANKOWSKI et al.

(Supreme Court, Special Term, New York County. February, 1902.)

**1. WILLS—CONSTRUCTION—CHARGE ON REALTY.**

A testator had an undivided half interest in valuable real estate, and personalty insufficient to pay his debts. He gave by his will legacies to the amount of $230,000, and gave his executors and trustees power to satisfy the legacies. *Held*, that he intended to charge them on the real estate.

**2. SAME—MORTGAGE ON REALTY.**

A sister of testator had the use for life, under a trust, of half of certain real estate, the other half of which testator owned. By his will he gave her in trust a life interest in his own half, and gave his executors power to mortgage to facilitate the management of his estate, and authorized them to join with the sister's trustees in any instrument which would advance the interests of both estates. *Held*, that the executors were authorized to mortgage his undivided interest to pay legacies which were a charge on the estate.

Action by George Freifeld and others against Grace S. Mankowski and others to construe a will. Judgment rendered.

Charles Gibson Bennett, for plaintiffs.
Hoge & Humphrey, for defendants Mankowski.
T. F. Humphrey, for defendant committee.
Jeremiah Wood, for defendants Poe and Freifeld.
H. V. Rutherford, for defendants Pynchon, Foulke, and Murray.
Samuel Riker, Jr., for defendant Neeser.

STECKLER, J. By his last will and testament, and the codicils thereto, Robert F. Bixby disposed of a large estate, which consisted of an undivided one-half interest, valued at about $800,000, in real property devised to the testator by his father, John M. Bixby, of real property owned by the testator in severalty of the value of $10,500, and of personalty worth about $20,000. The testator's debts were greater than the sum of his personal property. Legacies amounting to $230,-000 were bequeathed to various persons by the testator, and his executors and trustees ask for a construction of the will upon the points (1) whether the legacies are charged on the real estate of the testator; and (2) whether the trustees are authorized to raise the amount necessary to pay legacies by mortgage instead of sale.

The will was made in 1888. It bequeaths legacies amounting to $50,000; contains a clause disposing of all the rest, residue, and remainder of the testator's real and personal property; and gives to the

executors and trustees "full power to sell and dispose of my estate, both real and personal, at public or private sale, for the purpose of satisfying legacies or incumbrances, at such times, upon such terms, and in such manner as to them shall seem proper. In the exercise of this power, I request them to sell first the least valuable portion of my real estate." The first codicil to the will was executed May 16, 1895. Said codicil expressly ratifies the will, leaves intact all the legacies given by the will seven years before, and adds further legacies amounting to $101,000; making the total sum of the legacies $151,000. The second codicil is dated September 28, 1900. It makes no change in the will or first codicil, which it expressly ratifies, but gives additional legacies to the persons to whom bequests had been made in the will and first codicil. The second codicil contains this provision:

"In addition to the power of sale given in my said will to my executors and trustees therein named, I hereby give to them full power to mortgage or lease my said estate, or any part thereof, for the purpose of facilitating the management, preservation, and productiveness thereof; and I hereby also authorize and empower my said executors and trustees to join with the trustee or trustees or other representative or owner of the estate of my sister, or those who may become entitled to her said estate, in any instrument intended to conserve or advance the interests of both estates; giving and granting to my said executors and trustees all power necessary to carry into effect such intent."

The sister referred to by the testator is Grace S. Mankowski, a defendant in this action, a beneficiary for life of the other undivided one-half of the real property devised by their father, John M. Bixby; is the principal beneficiary of her brother's will, and his only next of kin. The testator, Robert F. Bixby, was never married.

One of the legatees is George Freifeld, an executor and trustee appointed by the testator; and the sum bequeathed to this legatee by the will, made in 1888, is $25,000, "exclusive of his compensation as executor, and it is to be paid absolutely, without regard to his acting as executor." In connection with this particular legatee substantially the same language is used in the first codicil, in which the testator gives him an additional legacy of $50,000; and in the second codicil, wherein a further legacy of $25,000 is given to Freifeld, making a total bequest to him of $100,000, these words are added: "All of said legacies are given in acknowledgment of his faithful services to me for many years." By the first codicil a legacy of $50,000 is given to Mrs. Lena Gordon, which the testator expresses to be "in recognition and appreciation of her careful and skillful nursing of me through an illness of several years' duration, and of her faithful and devoted service to me at all times." And in the same codicil a legacy of $1,000 is given to Betty Johnson "in recognition of her services to me during my illness." In the second codicil the further sum of $50,000 is given to Mrs. Gordon "in appreciation of the continued patient care and nursing devoted to me during my protracted illness."

It appears that the testator was a careful and conservative man; that for the last six or seven years of his life he was engaged exclusively in the management of his own property, with which he was thoroughly familiar; that he kept books in his own hand down to the time of his death; and that he was a confirmed invalid when

he executed the last codicil to his will. It was also proved that at the time of the execution of the first codicil a mortgage of $5,000 on the testator's undivided interest in the property devised by his father was outstanding, that a few weeks after the making of the first codicil he mortgaged said interest to secure a loan of $20,000, and that the former mortgage is still unpaid.

I think that the facts stated except this case from the operation of the rule that, where a testator bequeaths legacies and devises realty, the devisee should not suffer because of a misconception by the testator of the amount of his personalty, and that the legatees must be content with the amounts they actually receive, as though those bequests were of specific personal property. The fact that the testator gave his executors full power of sale for the purpose of satisfying legacies, coupled with the intimate knowledge of his affairs, is a very strong indication that he intended that the legacies should be charged on the realty. Gratitude for favors done and kindness shown prompted the largest legacies, and a design to reward faithful service is expressed by the testator. Knowing that his personal property would not pay his debts, it cannot be reasonably conceived that the testator meant such provisions in his will to be nugatory or unavailing. Taylor v. Dodd, 58 N. Y. 335; Kalbfleisch v. Kalbfleisch, 67 N. Y. 354; Goddard v. Pomeroy, 36 Barb. 546; Briggs v. Carroll, 117 N. Y. 288, 22 N. E. 1054; Wellbrook v. Otten, 35 Misc. Rep. 459, 71 N. Y. Supp. 937. I am therefore of opinion that the legacies are a charge on the realty.

The second question is whether the trustees are authorized to raise the amount necessary to pay legacies by mortgage. As has been stated, the will authorizes a sale of the testator's realty for the purpose of satisfying legacies; but, of course, this would not authorize the trustees to mortgage the property. Coutant v. Servoss, 3 Barb. 128. In the second codicil, however, by the provision hereinbefore quoted, the testator conferred a power to mortgage, in addition to the power of sale given by the will, "for the purpose of facilitating the management, preservation and productiveness" of the estate, and he authorized his trustees to join with the trustees of the estate of his sister "in any instrument intended to conserve or advance the interests of both estates." Almost all the testator's property consisted of an undivided one-half interest in realty devised to him by his father, John M. Bixby, and the remaining undivided half was by said John M. Bixby devised in trust for the benefit of Robert F. Bixby's sister, Grace S. Mankowski, during her life. The testator, Robert F. Bixby, after directing the payment of legacies, devised said interest owned by him to trustees in trust for his sister, Grace S. Mankowski, during her life; so that she is now entitled, subject to the payment of legacies, to the rents and profits of the entire estate, which consists of valuable real property on Fifth avenue, in this city, designated in this action as the Union League Club property; the No. 461 Fifth avenue property; the real property on Broadway and Thirty-Ninth street, known as the "Casino"; and other realty on West Twenty-Eighth street and West Tenth street, in said city. Each parcel, except the West Tenth street property, is in the possession of a tenant under a lease having

several years to run, and the disposition of the property in each case is a wise one. The defendant Grace S. Mankowski is now an incompetent, but her husband and committee, the defendant Casimir S. Mankowski, prefers that money to pay legacies should be raised by mortgage, rather than by a sale; and there is no question but that that method of raising the amount for legacies is preferable. For one of the trustees of the undivided interest devised by the testator is also the trustee of the other undivided half for the same beneficiary. All the property is thus virtually under the control of the same persons, and a sale, by bringing in new parties, would tend to defeat the apparent intention of the testator to have a common management of both estates. Under the circumstances as they were known to the testator, I am inclined to think that his intention, having charged the real estate with the payment of legacies, was that the realty could be mortgaged to satisfy the legacies; for such mortgage, where otherwise there would have to be a sale, conserves and advances the interests of both trust estates. Let judgment be entered in accordance with these views.

Judgment accordingly.